# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SINA KESHTKAR JAFARI, *et al.*, </br></br> Plaintiffs, </br></br> v. </br></br> MICHAEL R. POMPEO, *et al.*, </br></br> Defendants. | Case No. 1:19-cv-1819-RCL |

## MEMORANDUM OPINION

Plaintiffs Sina Keshtkar Jafari and Golriz Akhyani have brought suit against defendants Michael R. Pompeo (in his official capacity as U.S. Secretary of State), William P. Barr (in his official capacity as U.S. Attorney General), Carl C. Risch (in his official capacity as Assistant Secretary of the Bureau of Consular Affairs), Robert W. Thomas (in his official capacity as Consul General of the U.S. Consulate in Canada), and John Doe (in his official capacity as Consular Officer of the U.S. Consulate in Canada). Plaintiffs allege that defendants have failed to adjudicate Ms. Akhyani's immigrant visa application in a timely manner and have therefore violated the Administrative Procedures Act ("APA"), 5. U.S.C. § 701 et seq. *See generally* ECF No. 1. Plaintiffs seek a writ of mandamus under 18 U.S.C. § 1361 compelling defendants to act on Ms. Akhyani's application. *Id.* Defendants have filed a Motion to Dismiss (ECF No. 10) for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Upon consideration of the motion, opposition (ECF No. 11), and reply (ECF No. 16), the Court will **GRANT** defendants' Motion to Dismiss and **ORDER** that this case is dismissed with prejudice.

BACKGROUND

## I. PRESIDENTIAL PROCLAMATION 9645

The Immigration and Nationality Act ("INA") governs admission of aliens into the United States and normally requires a valid visa for entry. *See* 8 U.S.C. §§ 1181-1182, 1203. The person seeking a visa bears the burden of establishing that she "is not inadmissible" and "is entitled to the nonimmigrant, immigrant or refugee status claimed." 22 C.F.R. § 1361. Once a visa application is "completed and executed before a consular officer," the consular officer must either issue or refuse the visa. 22 C.F.R. § 42.81(a).

> The INA gives the President broad authority to exclude aliens, providing:
>
> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

8 U.S.C. § 1182(f). Pursuant to Section 1182(f), the President signed Presidential Proclamation 9645 ("Proclamation"). 82 Fed. Reg. 45161 (2017). This Proclamation resulted in entry restrictions on Iran due to inadequate information-sharing practices. The Proclamation does provide for waivers on a case-by-case basis if a foreign national demonstrates that (i) denying entry would cause undue hardship; (ii) entry would be in the national interest; and (iii) entry would not pose a threat to the national security or public safety. Proclamation § 3(c)(i)(A)-(C). The applicant bears the burden of proving that she is entitled to this waiver. 82 Fed. Reg. at 45168, § 3(c).

The third prong of the test is necessary to prevent "foreign nationals who may commit, aid, or support acts of terrorism, or otherwise pose a safety threat" from obtaining a waiver. *Id.* at 45162, § 1. This involves lengthy security checks, which are quite time consuming. According to

a report from the Department of State, more than 12,000 waiver applications have been found to meet the first two provisions of the test and are now under review to determine whether they meet the third provision. *See* Dep't of State Report: Implementation of Presidential Proclamation 9645 – December 8, 2017 to March 31, 2019 at 3.

**II. MS. AKHYANI'S VISA AND WAIVER APPLICATIONS**

Mr. Jafari is a U.S. permanent resident whose wife, Ms. Akhyani, is an Iranian citizen currently residing in Canada. ECF No. 1 at 2-3. Mr. Jafari filed an I-130 Petition for Ms. Akhyani in 2016, and she was interviewed by a consular officer in Montreal on October 29, 2018. *Id.* at 4-5. After this interview, defendant John Doe notified her that her visa application was refused pursuant to 8 U.S.C. § 1182(f) and Presidential Proclamation 9645. *Id.* at 5. Defendants are currently considering her eligibility (along with the eligibility of thousands of other applicants) for a waiver under Presidential Proclamation 9645. *Id.* The U.S. Consulate in Montreal made a request for information from Ms. Akhyani, to which she responded in November of 2018. *Id.* The status of her waiver request is "administrative processing." *Id.* Of the thousands of waiver applications that are currently pending, it is unclear how many were filed before Ms. Akhyani's. Plaintiffs believe that the government's adjudication of her waiver request has been unreasonably delayed and seek a writ of mandamus compelling defendants to make a final decision about her eligibility for this waiver.

**LEGAL STANDARDS**

Rule 12(b)(1) requires courts to dismiss any case over which they lack subject-matter jurisdiction. Federal courts are courts of limited jurisdiction and only have power that is

expressly granted to them. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It is the plaintiff's burden to establish that the Court has subject-matter jurisdiction. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

Rule 12(b)(6) requires courts to dismiss any case wherein the plaintiff has failed to state a legal claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding a motion to dismiss under 12(b)(6), courts must construe the pleadings broadly and assume that the facts are as plaintiff alleges; however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Additionally, courts are not obligated to "accept as true a legal conclusion couched as a factual allegation." *Papsan v. Allain*, 478 U.S. 265, 286 (1986).

**ANALYSIS**

As a preliminary matter, plaintiffs attempt to argue that although Ms. Akhyani's underlying visa application was denied, her entire visa application technically remains open because her waiver request is still being adjudicated. This argument fundamentally misunderstands the application process. The government already denied Ms. Akhyani's underlying visa application on October 29, 2018 due to the Proclamation. Although that denial triggers the application process for obtaining a waiver of the Proclamation, that waiver request is separate from the underlying visa application. If the President wanted to make the waiver request process part of the underlying visa application, he could have written the Proclamation so as to

have the agency wait to make any determination about the underlying application until it had also processed the waiver request. Instead, however, it is only necessary to go through the waiver process if one's underlying visa application is first denied. The Court thus finds that Ms. Akhyani's underlying visa application is distinct from her waiver application. While plaintiffs explain in their opposition that they only challenge the visa application as a whole because they believe that the entire process is still open due to the waiver, a liberal reading of the Complaint could suggest that the underlying application is also being challenged. Therefore, each of the government's arguments about why this case should be dismissed must be separated into two categories: (i) the underlying visa application; and (ii) the waiver process. The Court finds that the doctrine of consular nonreviewability clearly bars review of the underlying visa application but does not bar review of the government's ongoing adjudication of the waiver request. Although the doctrine of consular nonreviewability does not bar review of the waiver request, plaintiffs have still failed to state a legally cognizable claim in regards to the waiver request under the APA or any other statute, meaning that the entire case must be dismissed.

**I. DOCTRINE OF CONSULAR NONREVIEWABILITY**

The doctrine of consular nonreviewability recognizes that Congress has empowered consular officers with the exclusive authority to review a proper application for a visa when made overseas. *See* 8 U.S.C. §§ 1104(a), 1201(a), 1201(g). The Supreme Court clearly upheld the President's statutory authority to issue the Proclamation under 8 U.S.C. § 1182(f). *Trump v. Hawaii*, 138 S. Ct. 2392, 2408 (2018) (holding that the statute's "plain language . . . grants the President broad discretion to suspend the entry of aliens into the United States . . . based on his findings . . . that entry of the covered aliens would be detrimental to the national interest").

Because the underlying Proclamation is valid, the question becomes whether the doctrine of consular nonreviewability prevents the Court from reviewing decisions made pursuant to that Proclamation. The D.C. Circuit has explained the doctrine of consular nonreviewability as follows:

> In view of the political nature of visa determinations and of the lack of any statute expressly authorizing judicial review of consular officers' actions, courts have applied what has become known as the doctrine of consular nonreviewability. The doctrine holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise.

*Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999).

In *Mostofi v. Napolitano*, this Court dismissed a similar case based on the doctrine of consular nonreviewability. 841 F. Supp. 2d 208, 209 (D.D.C. 2012). In both cases, a consular officer abroad refused the plaintiff's visa application and reviewed the plaintiff's eligibility for a waiver. In *Mostofi*, the consular officer was located outside the U.S. in Australia, just as the consular officer in this case was located outside the U.S. in Canada. Like Ms. Akhyani, the person seeking a visa was an Iranian citizen. The Court determined that the consular officer's final decision with regards to the visa application was not reviewable under this doctrine. The same is true in this case with respect to Ms. Akhyani's underlying visa application—Congress has not expressly authorized judicial review of consular officers' visa determinations in this context, and thus the doctrine of consular nonreviewability prevents this Court from reviewing the government's denial of Ms. Akhyani's underlying visa application.

The government argues that the doctrine of consular nonreviewability applies not only to the underlying denial of Ms. Akhyani's visa application, but also to any allegations of unreasonable delay in its adjudication of her waiver application.[1] The cases that the government

---

[1] As previously explained, although both the underlying visa application and the waiver process can result in a visa, they are two distinct processes. Even if an open waiver request did mean that the entire visa process was still open,

cites in support of this argument, however, all involve *final* visa decisions. *See* ECF No. 10 at 10-11 (listing cases). As explained above, the doctrine of consular nonreviewability clearly applies to final visa determinations, but it does not apply to challenges regarding decisions that are not yet final. The consular nonreviewability doctrine "is not triggered until a consular officer has made a *decision* with respect to a particular visa application." *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016).[2] This is because a nonfinal decision is not an exercise of the government's "prerogative to grant or deny applications." *Id.* at 290-91. By defendants' own admission, Ms. Akhyani's waiver application is still in "administrative processing," meaning that no final decision has been made. Therefore, the doctrine of consular nonreviewability has not yet been triggered.

## II. APA

Defendants argue that regardless of whether the doctrine of consular nonreviewability applies, plaintiffs have failed to state a cognizable claim under the APA, and thus this case must be dismissed under Rule 12(b)(6). The APA does not provide a valid cause of action if another statute precludes judicial review through its "express language, . . . the structure of the statutory scheme, its objectives, its legislative history, [or] the nature of the administrative action involved." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984); *see* 5 U.S.C. § 701(a)(1). The APA also preserves "other limitations on judicial review" that predated the APA, including the doctrine of consular nonreviewability.[3] *Saavedra Bruno*, 197 F.3d at 1158.

---

however, plaintiffs have still failed to state a legally cognizable claim under the APA, meaning that the Court would still dismiss the case under Rule 12(b)(6).
[2] Defendants argue that this case is non-binding and thus is not applicable. The Court, however, finds Judge Kessler's reasoning persuasive and agrees with the logic of her Opinion.
[3] As previously discussed, however, the doctrine of consular nonreviewability only applies to the government's underlying denial of Ms. Akhyani's visa application and not to the waiver request that is still in progress.

Congress has made it clear that aliens cannot seek review of their exclusion orders under the APA. When the Supreme Court ruled that aliens could seek judicial review of exclusion orders under the APA if they were physically present in the United States (but not if they were physically outside of the United States), *see Brownell v. Tom We Shung*, 352 U.S. 180, 184-86 (1956), Congress responded by passing a statute barring judicial review of exclusion orders under the APA regardless of an alien's physical location, *see* Act of Sept. 26, 1961, Pub. L. No. 87-301, § 5(a), 75 Stat. 650, 651-53. The accompanying House Report explained that APA suits would "give recognition to a fallacious doctrine that an alien has a 'right' to enter this country which he [or she] may litigate in the courts of the United States[.]" H.R. Rep. No. 87-1086, at 33 (1961). Congress has also expressly foreclosed judicial review of visa revocations. 8 U.S.C. § 1201(i). Essentially, Congress has been clear on numerous occasions that it does not want courts reviewing agencies' visa determinations.

The APA's ban on judicial review extends beyond instances where such review has been expressly or impliedly prohibited. The APA also specifically exempts from judicial review "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). In this case, there is no separate statute giving an applicant the right to a waiver or the right to have a waiver application adjudicated in a certain manner. Instead, waivers are governed solely by the Proclamation. The APA "does not expressly allow review of the President's actions," *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992), and "there is no private right of action to enforce obligations imposed on executive branch officials by executive orders." *Chai v. Carroll*, 48 F.3d 1331, 1338 (4th Cir. 1995). Put another way, the Supreme Court made clear in *Trump v. Hawaii* that the President had the authority to issue this Proclamation under 8 U.S.C. § 1182(f), and the President was under no obligation to allow for waivers at all, as no separate statute or regulation

requires waivers. The logical inference is that any right to have a waiver request adjudicated in a specific manner must be found in the Proclamation itself. The Proclamation, however, makes it abundantly clear that it does not create "any right or benefit, substantive or procedural" against the government. 82 Fed. Reg. at 45172, § 9(c). This means that plaintiffs have no right to have the waiver adjudicated in any specific amount of time, and thus plaintiffs have failed to state a legally cognizable claim.[4] The Proclamation commits the waiver process to the agency's discretion, and it does not impose on the agency any timing requirements for adjudicating a waiver request, meaning that there would be no judicially manageable standard for the Court to apply in determining whether the government has engaged in an unreasonable delay.[5] Under the APA, a plaintiff may not seek judicial review if the court "would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Cheney*, 470 U.S. 821, 830 (1985).

Plaintiffs nonetheless argue in their opposition that the Court does have a standard by which to judge whether there has been an unreasonable delay: the TRAC factors. In *Telecommunications Research & Action Center v. FCC*, the D.C. Circuit set forth factors to use in determining whether an administrative delay is unreasonable. 750 F.2d 70, 77-78 (D.C. Cir. 1984). Those factors are: (1) the time agencies take to make decisions must be governed by a "rule of reason;" (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling of a statute, that statutory scheme

---

[4] Plaintiffs argue that because consideration for a waiver after denial of a visa under the Proclamation is mandatory and automatic, defendants cannot "refuse" to consider Ms. Akhyani's waiver application. This represents a fundamental misunderstanding of their own factual allegations. The government has not "refused" to consider Ms. Akhyani for a waiver; rather, her waiver request is in progress. Just because plaintiffs are unhappy with the amount of time that her waiver request has been pending does not mean that the government has "refused" to consider it, nor have plaintiffs properly alleged that the government has "refused" to consider it.

[5] Although the APA favors reviewability, that is not true where there are no judicially manageable standards for the Court to apply.

may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that the agency action is "unreasonably delayed." *Id.* at 79-80.

For the reasons already explained, however, the Proclamation itself governs defendants' handling of the waiver request, meaning that the TRAC factors are irrelevant here due to the Proclamation's express refusal to create any substantive or procedural rights. Moreover, even if the TRAC factors did apply, plaintiffs still could not demonstrate that the government has engaged in unreasonable delay. The third waiver requirement involves complex and high-stakes considerations regarding national security. There are thousands of waiver applications pending,[6] and it does not matter how many of those applications are ahead of or behind Ms. Akhyani's—the Proclamation has entrusted to the agency an important determination regarding national security, and the TRAC factors would account for the gravity of that decision. It is thus not for the Court to tell the agency that a year and a half is too long for a waiver request to remain pending, nor is it the Court's place to tell agency how to prioritize its thousands of pending applications. Plaintiffs seem to forget that Ms. Akhyani has no right to a waiver; instead, it is her responsibility to prove that she deserves a waiver. There is no statute requiring the government to adjudicate waiver requests in a certain order or within a certain amount of time, and thus no "rule

---

[6] Plaintiffs do not appear to contest the fact that thousands of applications are pending; rather, they argue that defendants have presented no evidence regarding how many of those applications are ahead of or behind Ms. Akhyani's. *See* ECF No. 11 at 3-4. The order that these applications were filed in, however, does not necessarily matter, as the Court does not have the authority to tell the agency how to process these requests or in what order to do so. Furthermore, even if there were not thousands of applications pending, the Court would still dismiss this case for failure to state a claim, so any argument about the number of pending applications is not dispositive of the motion to dismiss.

of reason" has been violated. Therefore, even if the TRAC factors did apply to the waiver request, plaintiffs have not set forth sufficient evidence to demonstrate that defendants have engaged in an unreasonable delay, and plaintiffs' claim would still fail as a matter of law.

As previously explained, Ms. Akhyani's underlying visa application is distinct from her waiver request. Therefore, plaintiffs' reliance on 5 U.S.C. § 555(b) (requiring the agency to make a decision within a "reasonable time") and 22 C.F.R. § 42.81(a) (requiring the consular officer to "either issue or refuse the visa" once the application is completed) is misplaced—the consular officer in this case already met those requirements by denying Ms. Akhyani's underlying visa application in October of 2018.[7] Any claim with respect to the underlying visa application itself is thus moot, as the government already made a final decision about that application. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (explaining that a case is moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome"). Ms. Akhyani's open waiver request is separate from her initial visa request and thus is not moot (but for the reasons explained above, there are no judicially manageable standards by which the Court can assess the government's handling of that waiver request).

It should also be noted that plaintiffs' requested relief—a writ of mandamus—is an "extraordinary remedy" that is only appropriate "to compel the performance of a *clear nondiscretionary* duty." *Pittson Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988) (emphasis added). Because plaintiffs have no clear legal entitlement to a waiver or to have the waiver

---

[7] Even if 5 U.S.C. § 555(b) were applicable to the waiver request itself, that provision still would not create a judicially manageable standard, as the phrase "reasonable time" is exceeding vague and implies that the agency has a great deal of discretion. Likewise, even if 22 C.F.R. § 42.81(a) applied to the waiver request, that regulation does not provide any timing requirements for a final decision, meaning that it provides no judicially manageable standards for the Court to apply.

request adjudicated within any specific timeframe, there is no "clear and nondiscretionary duty" that can give rise to the writ of mandamus that plaintiffs seek. This would be true even if the Court were to find that the TRAC factors applied, as those factors involve a great deal of discretion as well as the balancing of different interests; the TRAC factors thus do not impose the kind of "clear and nondiscretionary duty" required for a Court to issue a writ of mandamus in this case. Similarly, even if the APA provisions and regulations that plaintiffs cite did apply to the waiver request, they fail to impose a clear and precise duty worthy of a writ of mandamus for the same reasons that they fail to create a judicially manageable standard of review. When "there is no clear and compelling duty under the statute" requiring the government to act, the Court may not issue a writ of mandamus and must dismiss the action. *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005). Therefore, even when construing the allegations liberally, plaintiffs have failed to make a legally cognizable claim that would entitle them to a writ of mandamus, meaning that the Court must dismiss the case with prejudice.

## CONCLUSION

Based on the foregoing, the Court will **GRANT** defendants' Motion to Dismiss (ECF No. 10).

It will be **ORDERED** that this case is **DISMISSED** with prejudice.

A separate Order accompanies this Memorandum Opinion.


Date: May 3, 2020                                                                    /s/
                                                                          Royce C. Lamberth
                                                                    United States District Court Judge